IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HITHAM ABUHOURAN, | : | CIVIL ACTION NO. **3:CV-11-1846** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN H.L. HUFFORD, | : | |
| | : | |
| Respondent | : | |

### REPORT AND RECOMMENDATION

## I.  Procedural Background.

On October 6, 2011, Petitioner Hitham Abuhouran, an inmate at FCI-Schuylkill, Minersville,

Pennsylvania, filed, *pro se*, the instant 15-page Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2241.  (Doc. 1).  Petitioner also attached his 11-paragraph Affidavit to his habeas

petition. (Doc. 1-1).  Additionally, Petitioner filed a Motion for Leave to Proceed *In Forma Pauperis*.

(Doc. 4).  On October 18, 2011, we issued an Order and denied Petitioner's Motion for Leave to

Proceed *In Forma Pauperis* since he had $90.64 in his inmate account and his six month average

daily balance in his account was $273.27.  (Doc. 5).  Subsequently, Petitioner paid the filing fee.[1]

(Doc. 6).

In his §2241 habeas corpus petition, Petitioner essentially claims that based on *United States*

*v. Santos*, 553 U.S. 507, 128 S.Ct. 2020 (2008), his 1996 sentence imposed by the U.S. District

Court for the Eastern District of Pennsylvania on money laundering charges in Counts 27 and 54

---

[1]Petitioner Abuhouran has filed two prior cases with this Court, namely, *Abuhouran v. Kaiserkane, Inc., et al.,* No. 3:CV-10-2281, M.D.Pa., and *Abuhouran v. Nicklin, et al.*, No. 3:CV-11-0306, M.D. Pa.  Both cases are closed.
    WE NOTE THAT Petitioner Abuhouran had an alias name of "Steve Houran."

of his Indictment was illegally enhanced since it was based on gross receipts and not net profits. Petitioner states that if the Court reduces the amounts of money laundering proceeds in either Count 27 or Count 54, the maximum sentence he would receive is ten (10) years.  Petitioner states that since he has now served almost fifteen (15) years in prison, this Court should order his immediate release from confinement.[2]

Named as Respondent in the present habeas petition is H.L. Hufford, the Warden at FCI-Schuylkill.[3]  The habeas petition has not yet been served on Respondent for a response.

We now give preliminary consideration to the Habeas Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1 (b)).  *See Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979); *Romero v. Holt*, 2006 WL 3437360 (M.D. Pa.); *Winfield v. Martinez*, 2008 WL 4541945 (M.D. Pa.); *Francis v. U.S.* , 2009 WL 1010522 (M.D. Pa.); *Rivera v. Scism*, Civil No. 10-1773, M.D. Pa.[4]

---

[2]Petitioner styles his present habeas petition as an "Emergency Motion for Immediate Release," since he states that his release date from prison is in about five (5) months and that he is entitled to immediate release from confinement.

[3]Petitioner named the correct Respondent since he is presently confined at FCI-Schuylkill and Hufford is the Warden at this prison.  *See* 28 U.S.C. § 2242 and § 2243.  *See Rivera v. Scism*, Civil No. 10-1773, M.D. Pa.  Petitioner also correctly filed his habeas petition with this Court since he is incarcerated in the Middle District of Pennsylvania.  *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

[4]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

**II.  Factual Background**.

Petitioner states that he was charged with 27 counts on October 12, 1995, over 16 years ago, in the  United States District Court for the Eastern District of Pennsylvania, Criminal Case No. 95-CR-0560-04.  (Doc. 1, p. 4).  Petitioner indicates that he was charged, in part, with 15 counts of bank fraud, in violation 18 U.S.C. § 1344, four counts of money laundering, in violation of 18 U.S.C. § 1956, one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 371, one count of conducting  continuing financial crimes, in violation of 18 U.S.C. § 225, and one count of interstate transportation of property obtained by fraud, in violation of 18 U.S.C. § 2314. (*Id*.).[5]

Petitioner avers that he pled guilty to "all charges," *i.e.* all 27 counts, on September 10, 1996.  (Doc. 1, pp. 7 and 12, and Doc. 1-1, Affidavit, ¶ 2).  We obtained a copy of the Criminal Docket Sheet for Petitioner's Criminal Case No. 95-CR-0560-04, in the United States District Court for the  Eastern  District  of  Pennsylvania,  *U.S.  v.  Hitham  Abuhouran*,  at  the  website  of http://ect.paed.uscourts.gov.  The Criminal  Docket Sheet in Petitioner's Criminal Case No. 95-CR-0560-04 reveals that Petitioner was sentenced on August 15, 1997, on all 27 charges to a concurrent term of imprisonment for 188 months (*i.e.* 15 years and 8 months).  Petitioner was also ordered to pay restitution in the amount of $6,917,246.10.[6]  Petitioner's motion for a downward

---

[5]Since the complete factual background of Petitioner's criminal conviction in the Eastern District of Pennsylvania is stated in the New Jersey District Court's recent July 2009 decision dismissing Petitioner's prior §2241 habeas petition, we do not fully repeat it herein.  *See Abuhouran v. Grondolsky*, 643 F.Supp. 2d 654, 655 (D.N.J. 2009).

[6]The Judgment and Commitment Order was filed on September 3, 1997.

departure was denied by the sentencing court, District Court for the Eastern District of Pennsylvania. *See U.S. v. Hitham Abuhouran* 972 F.Supp. 326 (E.D. Pa. 1997). Petitioner indicates that he was under the impression from the court, his counsel and the prosecutor that he would receive at most a 10-year sentence. (Doc. 1, p. 11 and Doc. 1-1, Affidavit).

The Criminal Docket Sheet in Petitioner's Criminal Case No. 95-CR-0560-04 reveals that Petitioner filed an appeal of his judgment of sentence on August 25, 1997, with the Third Circuit Court of Appeals. The Third Circuit affirmed Petitioner's judgment of sentence on November 19, 1998. *See U.S. v. Hitham Abuhouran*, 161 F.3d 206 (3d Cir. 1998). Petitioner then filed a Petition for *Certiorari*, and it was denied by the United States Supreme Court on April 19, 1999. *See Hitham Abuhouran* v. *U.S.,* 526 U.S. 1077 (1999).

On February 10, 2000, Petitioner filed a Motion to Vacate, Set Aside or Correct is Sentence with the District Court pursuant to 28 U.S.C. §2255. On November 26, 2002, the United States District Court for the Eastern District of Pennsylvania denied Petitioner's §2255 Motion. Petitioner then filed a Notice of Appeal with the Third Circuit. Petitioner's appeal was dismissed by the Third Circuit on June 5, 2003.

On March 24, 2004, Petitioner filed a Motion to Modify or Correct his Sentence under 18 U.S.C. §3582 with the United States District Court for the Eastern District of Pennsylvania, and the Court denied it on August 11, 2004.

Petitioner then filed a Motion to Dismiss Count 57 of the Indictment for failure to state an essential element of the crime with the United States District Court for the Eastern District of Pennsylvania under Fed.R.Civ.P. 60(b)(4), and the Court denied it on December 18, 2007.

Petitioner filed another Motion to Modify or Correct his Sentence under § 3582 on June 5, 2008, and the Court denied it on June 12, 2008.

Petitioner filed an application to file a second or successive §2255 Motion with the Third Circuit, and it was denied on October 6, 2008.

Petitioner also indicates that, after *U.S. v. Santos* was decided in June 2008, he filed a §2241 habeas petition in the District of New Jersey.  (Doc. 1, p. 12).  We obtained a copy of the Civil Docket Sheet for Petitioner's September 3, 2008 New Jersey §2241 habeas petition, *Abuhouran v. Grondolsky*, Civil No. 08-4379, D.N.J., at the website of http://ecf.njd.uscourts.gov.  *See also Abuhouran v. Grondolsky*, 643 F.Supp. 2d 654 (D.N.J. 2009).  Petitioner states that in his prior §2241 habeas petition filed with the New Jersey District Court, he challenged 4 counts of money laundering in his Indictment, namely Counts 8, 18, 27 and 31, and that the New Jersey District Court dismissed his habeas petition, with prejudice, on July 21, 2009.  (*Id*.).  Plaintiff states that the New Jersey District Court did not reach the merits with respect to Count 54 of his Indictment and the enhancement in Count 27.  (*Id*.).[7]  The Civil Docket Sheet for Petitioner's September 3, 2008 New Jersey §2241 habeas petition reveals that Petitioner's §2241 was dismissed with prejudice on July 20, 2009, and that Petitioner filed a Notice of Appeal with the Third Circuit.  *See Abuhouran v. Grondolsky*, 643 F.Supp. 2d 654 (D.N.J. 2009).  On August 25, 2010, the Third Circuit affirmed the District Court's July 20, 2009 Order.  *See Abuhouran v. Grondolsky*, 392 Fed.Appx. 78 (3d Cir. 8-25-10).

---

[7]Notwithstanding Petitioner's contention, Petitioner clearly could have raised his instant habeas claims regarding Counts 27 and 54 in his prior §2241 habeas petition.

Petitioner is now confined in FCI-Schuylkill, and he filed his present §2241 habeas petition on October 6, 2011, again claiming that he is actually innocent of his money laundering conviction based on *Santos*. According to the BOP Inmate Locator found at website www.bop.gov, Petitioner's projected release date from prison is September 25, 2012.

## III.  Claims of Habeas Petition.

As mentioned, Petitioner claims, in part, that he is innocent of the sentence enhancements regarding Count 54 and Count 27 of his Indictment, and that he is innocent of the proceeds amounts listed in those counts based on *U.S. v. Santos, supra*. Petitioner claims that the government failed to prove an essential element of the money laundering Count 54 and Count 27 enhancement based on *Santos*. (*Id*., p. 11). Petitioner explains as follows:

> The Petitioner states that he was told by trial counsel pre-<u>Santos</u> that the transactions with checks from the bank fraud scheme definitely amounted to money laundering. Petitioner also states that counsel never sat down and explained the various elements of the money laundering charges he was charged with. Basically, the Petitioner asserts, and the record bears out, that he expected his worst sentencing exposure to be limited to ten (10) years, this was assured by the district judge during the guilty plea colloquy and affirmed by the prosecutor. Also Petitioner was never advised by the sentencing court on the elements of the crimes in which he was charged with. In fact, the colloquy between the court and the Petitioner failed to address any of the money laundering charges and specifically count 54 and 27 enhancements or any count. The Petitioner assert that had he known that his sentencing exposure was left to the Prosecutor's recommendation and demands, he would not have pleaded guilty.

(*Id*.).

Further, Petitioner states:

> The Petitioner is innocent of Count 54 and Count 27 enhancements and that appointed counsel provided ineffective assistance of counsel during the post-*Santos* challenges. The amounts listed in Count[s] 54 and 27 was (sic) not challenged prior to this §2241 because the Petitioner had no opportunity to raise these

claims.  The Petitioner will be subjected to an immediate release based on the reduction of the amounts of money laundering in both counts, in fact, the Petitioner thus far have (sic) most of the imposed sentence, by reducing either amounts of money laundering in count 54 or 27 the maximum sentence Petitioner will receive is ten years, thus far the Petitioner served almost fifteen (15) years.

(*Id*., p. 12).

Petitioner states that even though the amount charged in Count 27 was $100,000, the amount used for sentencing him was $1,640,000.  Petitioner also states that in Count 54, he was charged with the amount of $2,527, 812.15 and the amount used for sentencing was $4,729,812.15.  (*Id*., p. 13).  Petitioner claims that these enhancements caused his sentence to exceed the 10-year sentence  he believed the Court was going to impose.  Thus, Petitioner states:

> At issue herein this §2241 is Count 54 Conspiracy to commit money laundering under 18 U.S.C. §371 in the amount of $2,527,812 and the enhancement in Count 27 of the indictment these added amounts rendered Petitioner's sentence illegal as well as his conviction under Count 54.  Count 54 failed to meet the new interpretation Santos now required in charging money laundering under §1956.  As stated earlier Count 54 was suspended by the district court but the $2,527,812 in alleged money laundering was added to the sentencing table for purpose of sentencing.  These acts of adding amounts of alleged money laundering penalized under different penalty of a statute is unlawful in two parts; that it violates the Santos teachings and violates due process of law.

> Given the fact that the record now clearly establishes that petitioner's guilty plea to Count 54 and the enhanced amounts in count 27 was constitutionally invalid, the petitioner presumptively innocent of that offense, the burden is on the government to prove count 54 and 27 enhancements.

(*Id*., p. 14).

Petitioner concludes his habeas petition as follows:

> The claims was (sic) never subjected for review on the merit.  Petitioner submits that none of the financial transactions in count 54 was net profit in light of Santos newly defined term of "Proceeds" to be "net profits."  Petitioner's (sic) is

actually and factually innocence (sic) that was an objective factor external to his defense, which was not available at the time of sentencing back in 1997. <u>Santos</u>, decision requires net profit transactions from the unlawful activity in order to charge defendants under §1956, this amounted to recognition of a new right on the part of defendants whose conduct did not meet this to be free from the associated penalties.  Because all financial transactions were based on gross receipts in Count 54 and enhancements in count 27 should be invalidated and dismissed.  The amounts in count 54 was (sic) $2,527,812, and Count 27 enhancement was $1,640,000 a total of $4,167,812. should be reduced from the sentencing table leaving the Petitioner with $562,000.

(*Id.*, p. 15).

As relief, Petitioner requests this Court to grant his "immediate release" from confinement since he has served most of his sentence with only five months remaining.  (*Id.*, p. 15).  As stated, Petitioner's projected release date from prison is actually September 25, 2012.

## IV.  Discussion.

Initially, we find that this is Petitioner's second §2241 habeas petition in which he raises essentially the same claims based on *Santos* as he did in his previous §2241 habeas petitions he filed with the  District of New Jersey District Court.  *See* 643 F.Supp.2d 654 (D.N.J. 2009).   In *Reynolds v. Martinez*, 2008 WL 5104890, *2 (M.D. Pa.), the Court stated:

> Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977), as made applicable to 28 U.S.C. § 2241 cases by Rule 1 provides:
>
> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the judge finds that the failure of petitioner to assert those grounds in a prior petition constituted an abuse of the writ.
>
> 28 U.S.C. § 2244 authorizes dismissal of a successive habeas petition "that presented no new ground not heretofore presented and determined." *McCleskey v. Zant,* 499 U.S. 467, 483, 111 S.Ct. 1454,

113 L.Ed.2d 517 (1991). Specifically § 2244 states in relevant part:

> (a) No circuit or district judge shall be required to entertain an
> application for a writ of habeas corpus to inquire into the
> detention of a person pursuant to a judgment of a court of the
> United States if it appears that the legality of such detention
> has been determined by a judge or court of the United States
> on a prior application for writ of habeas corpus except as provided
> in section 2255....
>
> 3(A) Before a second or successive application permitted by this section
> is filed in the district court, the applicant shall move in the appropriate
> court of appeals for an order authorizing the district court to consider the
> application.

See also *Solomon v. Hart*, 2010 WL 480857 (M.D. Pa. 2-4-10).

In his prior § 2241 Petition for Writ of Habeas Corpus filed by Petitioner in 2008 with the

District of New Jersey District Court, he claimed as follows:

> In these two cases Petitioners seek relief pursuant to 28 U.S.C. § 2241, asserting
> that they are actually innocent of the money laundering charges of which
> they were convicted, and that they are entitled to vacatur of those convictions
> in light of the Supreme Court's decision in *United States v. Santos,* ---
> U.S. ----, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). The Petitioners are
> Hitham Abuhouran (Steve Houran) and Aktham Abuhouran (Tony
> Houran). Associated with them in their criminal transactions was their brother
> Adham Abuhouran (Adam Houran), who is now a fugitive. This case presents
> the question whether the money derived from the multiple bank frauds
> of which Petitioners and their confederates were guilty were "profits" of
> the bank frauds and thus "proceeds of some form of unlawful activity"
> within the intent of § 1956(a)(1) of the money laundering statute.

See *Abuhouran v. Grondolsky*, 643 F.Supp. 2d at 654.

The New Jersey District Court stated that after *Santos* was decided, Petitioner Abuhouran

filed an application seeking permission from the Third Circuit to file a successive §2255 motion, and

the Third Circuit denied the request "for the reason that *Santos* did not set forth a new rule of

constitutional law retroactively applicable to cases on collateral review, and thus his request did not fall within the narrow grounds allowed for a successive 2255 petition." *Id.* at 656.  However, in Petitioner's §2241 habeas case filed in the New Jersey District Court, the Government acknowledged that Petitioner could proceed under §2241.  *Id.*

Specifically, in Petitioner's prior §2241 habeas petition, the New Jersey District Court stated that he claimed "that by virtue of the Supreme Court's definition of 'proceeds' for money laundering purposes as 'profits' and not 'receipts,' [he is] innocent of the money laundering charges of which [he was] convicted." *Id.* at 659.  The New Jersey District Court conducted a hearing on Petitioner's §2241 habeas petition and then made an in depth analysis of the *Santos* case and its applicability to Petitioner's habeas claims.  *Id.* at 659-668.  The New Jersey District Court concluded that based on *Santos*, "[t]he 'proceeds' of the predicate specified unlawful activity means the profits of that activity and not its gross receipts." *Id.* at   661.  The New Jersey District Court clearly considered Petitioner's conviction on Count 27, § 1956 money laundering charge, in its decision.  643 F.Supp.2d at 667-668.  In fact, the Court stated, "Steve [Petitioner] and Adam Houran assert that in light of *Santos's* definition of proceeds as profits and not receipts, they are innocent of the crime of money laundering. They contend that the transactions listed in Counts 8, 18, 27 and 31 were not net profits; rather, they were deposits for work on projects and new homes to be built."

The Court also stated:

> Petitioners seek to persuade the court that none of the money laundering offenses with which they were charged involved profits. They argue that they used all of the money loaned by BBV to further projects of HCC and its affiliates, and that, because HCC continually lost money, the frauds did not result in any profit that would form a basis for a money laundering charge. Like the lottery operation in *Santos,* where the bets were used to

> pay Santos's expenses, they argue, the proceeds of the loans were used to pay the expenses of the business.

*Id*. at 668-669.

The New Jersey Court concluded as follows:

> The Court accepts the plurality opinion in *Santos* as a statement of the law, as of the date the offenses were committed, namely, that "proceeds" as used in the money laundering statute means "profits" and not "receipts." FN2 Given that definition, the present case is at the opposite pole from *Santos*. *Santos* concerned the predicate offense of gambling, an offense which, in order to commit it, required the payment of runners, collectors and winners as part of a combined operation. The present case concerns the predicate offense of bank fraud, an offense which is completed after the fraudulent conduct has induced the victim bank to pay out the money. The de minimis expenses of assembling fraudulent documents and transporting oneself to and from the bank can be ignored. There are no expenses inherent in the crime of bank fraud, as there are in running a gambling operation. Consequently, all the payments derived from the fraud are profits to the perpetrators and thus are proceeds for the purpose of Section 1956(a)(1).

>> FN2. Effective May 20, 2009, the money laundering statute was amended to include, a provision that "(9) the term 'proceeds' means any property derived from or obtained or retained directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." *See* 18 U.S.C. § 1956(c)(9).

> Petitioners contend that notwithstanding that the money laundering payments were not a part of the predicate bank fraud, the "merger" concept prevents them from being treated as proceeds of the bank fraud. A fair reading of Justice Scalia's plurality opinion leads to the conclusion that merger does not prevent the laundered moneys in this case from being deemed profits of the bank fraud.

*Id*. at 670.

The Court also found that Petitioner did not fall within the merger scenario as contemplated by the *Santos* Court. *Id*. at 671. The Court stated:

> If Petitioners' expansive reading of *Santos* were adopted, it would be difficult, if not impossible, to prosecute a § 1956(a)(1)(A)(i) case. Petitioners contend that

under the merger concept the proceeds, i.e. profits, must be those, not of the charged specified unlawful activity, but, rather, the profits of the entire criminal enterprise of the conspirators. In this case, that would be the profits not of the particular bank fraud which was the charged specified unlawful activity, but, rather, the profits of the construction business which was the beneficiary of the defendants' bank frauds. To determine those profits an audit would have to be conducted as of the date of each charged money laundering transaction.

An indictment charging bank fraud or mail fraud may contain many individual counts of bank fraud or mail fraud, each of which may be to derive funds for one or more objectives of the participants. It cannot be the intent of the *Santos* plurality opinion to require that in order to prosecute a § 1956(a)(1)(A)(i) money laundering charge in conjunction with the bank fraud or mail fraud charges the government must prove the profitability of the projects in which the defendants proposed to use their ill-gotten gains.

The plurality opinion itself rejects the broad construction Petitioners would give to it. It limits the expenses that may not  be considered profits to those that "normally occur during the course of running [the specified unlawful activity.]" *Id.* at 2027.

*Id.* at 672-673.

Thus, the Court found that "the proceeds of the bank frauds were profits and a proper basis for the money laundering charges on which [Petitioner and his brother] were convicted.  This conclusion is not affected by the merger concept discussed in *Santos*." *Id.* at 673.  Thus, the New Jersey District Court dismissed Petitioner's prior §2241 habeas petition with prejudice.  *Id.* at 675.

In *Abuhouran v. Grondolsky*, 392 Fed.Appx. at 79, the Third Circuit affirmed the District Court's dismissal with prejudice of Petitioner's prior §2241 habeas petition and discussed the background of Petitioner's case.  The Third Circuit stated:

Based on their involvement in a scheme to fraudulently obtain over $9 million in loans from the Bank of the Brandywine Valley, Hitham Abuhouran and Aktham Abuhouran were convicted of numerous charges including bank fraud and money laundering. Following the Supreme Court's decision in *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), they sought permission to file successive motions pursuant to 28 U.S.C. § 2255 to challenge their convictions for money laundering. We denied the request but concluded

that, as they claimed that they were being detained for conduct that had subsequently been rendered non-criminal by an intervening Supreme Court decision, they could file habeas petitions pursuant to 28 U.S.C. § 2241. *See In re Dorsainvil,* 119 F.3d 245, 252 (3d Cir.1997).

In their § 2241 petitions, they argued that under the interpretation of the federal money laundering statute set forth in *Santos,* they were improperly convicted of money laundering. Specifically, they relied on *Santos* for the proposition that transactions that merely pay expenses of an unlawful activity do not constitute "proceeds" of that activity and thus do not meet the definition of money laundering. They contended that the payments charged as money laundering in their case were expenses of the bank frauds and not profits from the bank frauds and, therefore, not money laundering. **The District Court rejected this argument, holding that the payments at issue were profits and a proper basis for the money laundering charges.** For the reasons stated below, we will affirm.

(Footnote omitted) (Emphasis added).

The Third Circuit further stated:

> In 1995, Hitham Abuhouran ("Steve Houran") and Aktham Abuhouran ("Tony Houran) were named in a 57-count Indictment alleging a scheme to fraudulently obtain over $9 million in loans from the Bank of the Brandywine Valley ("BBV"). This amount exceeded BBV's capital, and the bank collapsed. The charges against Defendants included bank fraud, in violation of 18 U.S.C. § 1344, and "promotion" money laundering, in violation of § 18 U.S.C. § 1956(a)(1)(A)(i). Steve Houran was charged with fifteen counts of bank fraud and four counts of money laundering; Tony Houran was charged with four counts of bank fraud and one count of money laundering.
>
> Each of the counts of money laundering corresponded to a count of bank fraud. Specifically, each money laundering count concerned a single check that allegedly used the proceeds of a bank fraud scheme to promote that scheme. For example, Count 16 charged Defendants with obtaining a $350,000 line of credit from BBV for the use of Houran Plaza Associates by misrepresenting the purpose of the loan. It alleged that Defendants stated that the funds would be used to refurbish a building owned by Houran Plaza Associates when the building had already been refurbished and the funds were actually to be used for Defendants' personal needs and for their business, Houran Construction Company. After obtaining the funds, Defendants and their brother, Adham Abuhouran ("Adam Houran"), engaged in a series of transactions; in one, Adam Houran wrote a check for $50,000, payable to Houran Construction Company. This transaction was charged as money laundering in Count 18.

Steve Houran pleaded guilty to all charges against him and was sentenced to 188 months' imprisonment, five years of supervised release, and restitution in the amount of $6,917,246. Tony Houran proceeded to trial and was convicted of all charges against him save one count of perjury and one count of interstate transportation of stolen property. He was sentenced to 109 months' imprisonment, five years of supervised release, and restitution in the amount of $1,860,477.

In 2001, Defendants were named in a new indictment that charged them with additional frauds. In part, the 2001 indictment alleged that Defendants engaged in a scheme to defraud six United States banks of $2.5 million through the use of counterfeit checks, to have that money wired to Jordan, and to flee the United States. One of the six banks, PNC Bank, wired $185,000 to an account in Tony Houran's name in Jordan. Steve Houran pled guilty to conspiracy and was sentenced to 60 months' imprisonment, with 24 months to run consecutively to his earlier sentence. At present, his projected release date is September 13, 2012.

*Id.* at 79-80.

The Third Circuit concluded as follows:

In an extensive written opinion, the District Court carefully and thoroughly considered the contentions that the Hourans raise in this appeal. After a complete review of the record and the parties' arguments, we find no basis for disturbing the District Court's ruling. Therefore, we will affirm the District Court's dismissal of the Hourans' habeas petitions substantially for the reasons set forth by the District Court in its written opinion. *See Abuhouran v. Grondolsky,* 643 F.Supp.2d 654 (D.N.J.2009).

We add only the following: The crux of the Hourans' argument on appeal is that the transactions charged as money laundering actually constituted expenses of the bank frauds, not profits from the bank frauds. They fail to identify, however, exactly what expenses they were paying. A comparison with the facts of *Santos* emphasizes the deficiencies in the Hourans' argument. In *Santos,* the transactions charged as money laundering were specifically identified as payments to the individuals who helped run the illegal lottery and payments to lottery winners. 128 S.Ct. at 2022-23. Knowing exactly what the payments were used for, the Court could determine that they "normally occur[red] during the course of running a lottery" and were clearly expenses of the unlawful enterprise. *Id.* at 2027. The Hourans have not explained how the transactions charged as money laundering in their case were payments that were integral to the bank fraud scheme. Accordingly, the District Court correctly concluded that

14

>    the Hourans are not actually innocent of money*82 laundering under *Santos,*
>    and we will affirm.

*Id.* at 81-82. (Footnote omitted).

Based on the foregoing discussion of Petitioner's prior § 2241 habeas petition, we find that Petitioner Abuhouran's present §2241 habeas petition again challenging his money laundering conviction and raising claims under *Santos* is a successive habeas petition.  Since Petitioner filed a previous §2241 habeas petition claiming that he was innocent of the money laundering charge of which he was convicted in Count 27 of the Indictment, and since the New Jersey District Court found that *Santos* did not render invalid Petitioner's Count 27 money laundering conviction, we find Petitioner's present §2241 habeas petition to be a successive petition, and we find that it raises the same claims under *Santos* as in Petitioner's prior §2241 habeas petition.

As stated above, Petitioner is basically raising the exact same claims under *Santos* which he raised in his §2241 habeas petitions with the United States District Court for the District of New Jersey. Thus, since Petitioner's first habeas petition was  dismissed with prejudice on its merits by the New Jersey District Court, we find that his present habeas petition is subject to dismissal as a successive habeas petition since it contains the same issues under *Santos* as his prior habeas petition.

We find that Petitioner's present § 2241 habeas petition should be dismissed as a successive habeas petition since Petitioner is again attacking his conviction on Count 27 money laundering and his 188-month sentence to prison.  We find the New Jersey District Court's detailed analysis of *Santos* and its effect on Petitioner's money laundering counts to be equally applicable to Petitioner's instant claims challenging Counts 27 and 54 of his Indictment.

In his present habeas petition, Petitioner again states that the *Santos* case "redefined the meaning of the term 'proceeds' within the money laundering Statute 18 U.S.C. §1956 to be 'net profits' as opposed to gross receipts. Petitioner states that based on *Santos*, he is now challenging his conviction on Count 54 and Count 27 enhancements in the amount of $1,640,000, and that both of these Counts enhanced his sentence significantly. (Doc. 1, p. 2). Petitioner claims that without the enhancements, he would have received a 10-year prison sentence, and that he would have fully served his sentence almost 5 years ago. Petitioner states that the law before *Santos* "foreclosed [his] argument and its interpretation to the term proceed means gross receipts, and that the Third Circuit had repeatedly upheld money laundering convictions based on gross receipts. Petitioner contends that "*Santos* overruled this erroneous interpretation of the term 'proceeds' to mean 'net profits' in §1956." (*Id.*). Petitioner argues that in his case, the government charged him with financial transactions that were expenses to the underlying charges and not profits of the crimes. (*Id.*)

Petitioner also argues that *Santos* "decriminalized the conduct for which he had been convicted because the government had relied on 'gross receipts,' whereas *Santos* limited 'proceeds' to 'profits.'" (*Id.*, p. 3). Petitioner further contends:

> By construing the statue (sic) [§1956] in this way, <u>Santos</u> resulted in a new substantive rule that applies retroactively to cases on collateral review because it carries "a significant risk that a defendant stands convicted of an act that the law does not make criminal." <u>Schriro</u>, 542 U.S. at 352. 124 S.Ct. at 2522-23.
>
> Petitioner assert[s] that his constitutional argument was not previously available, the change in law upon which he relies occurred after he was convicted and sentenced. Thus, he could not have raised his constitutional claim before the sentencing court or on direct appeal, or via a §2255 motion.

(*Id.*).

16

We find that Petitioner raised precisely his present claims under *Santos* in his prior §2241 habeas case, and that the New Jersey District Court made a thorough analysis of his claims challenging his money laundering charges and conviction. We find that Petitioner's present habeas petition fails to allege new or different grounds for relief, and the prior determination by the New Jersey District Court was on the merits of his claims under *Santos*. Specifically, the New Jersey District Court found that the payments charged as money laundering in Petitioner's criminal case were profits from bank frauds and not expenses, and that they were a proper basis for the money laundering charges.

The Third Circuit Court also found that Petitioner failed to explain how the transactions charged as money laundering in his criminal case were expenses of the bank frauds.

Also, as mentioned, Petitioner states that "the amounts listed in Count[s] 54 and 27 was (sic) not challenged prior to this §2241 because the petitioner had no opportunity to raise these claims." (Doc. 1, p. 12). Even though Petitioner states that he did not challenge the amounts listed in his Counts 27 and 54 in his prior habeas petition, we find that the failure of Petitioner to assert these grounds in his prior habeas petition constitutes an abuse of the writ.

Thus, we will recommend that Petitioner's instant habeas petition be dismissed as a successive petition. *See Solomon, supra*.

**V**.  **Recommendation.**

Based upon the foregoing, it is respectfully recommended that Petitioner Abuhouran's Petition

for Writ of Habeas Corpus **(Doc. 1)** be dismissed with prejudice, pursuant to 28 U.S.C. § 2244, as a

successive habeas petition.


<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  November 3, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HITHAM ABUHOURAN, | : | CIVIL ACTION NO. **3:CV-11-1846** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN H.L. HUFFORD, | : | |
| | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

Report and Recommendation dated **November 3, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 3, 2011**